| | |
|---|---|
| In Re: | : |
| | : |
| MARCOS EDUARDO CAMARGO | : |
| xxx-xx-2761 | :CHAPTER 13 |
|            Debtor. | :CASE NO. 18-00672/RNO |
| | : |
| | : |
| | : |
| JP MORGAN MORTGAGE ACQUISITION: | |
| CORP. | : |
|            Movant, | : |
| v. | : |
| | :Hearing Date: July 22, 2020 at 9:30 a.m. |
| MARCOS EDUARDO CAMARGO | : |
| | : |
|            Debtor, | : |
| And | : |
| | : |
| CHARLES J. DeHART, III, ESQUIRE | : |
| | : |
|            Trustee, | : |
| | : |
|            Respondents. | : |
| | : |

**MOTION OF JP MORGAN MORTGAGE ACQUSITION CORP. FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT MOVANT TO EXERCISE ITS RIGHTS UNDER STATE LAW AGAINST CERTAIN REALTY KNOWN AS 1103 HERITAGE DRIVE, STROUDSBURG, PENNSYLVANIA 18360**

Movant, by its Attorneys, Romano Garubo & Argentieri, Emmanuel J. Argentieri,

Esquire appearing, hereby requests a modification of the automatic stay and leave so it can exercise

its rights under state law against certain realty and avers as follows:

      1.     Movant is JP MORGAN MORTGAGE ACQUSITION CORP., (hereinafter

"Movant").

2. Movant is the holder of a Note secured by a mortgage on the Debtor's realty commonly known as 1103 Heritage Drive, Stroudsburg, PA 18360 ("Subject Property"). **Please see Exhibit A, attached hereto.**

3. Debtor's Chapter 13 petition was filed February 21, 2018. Debtor's current monthly payment amount is $1,383.15.

4. Debtor should have made (28) twenty-eight payments outside of the plan since the date of filing petition.

5. Since the date of filing, Debtor has only paid (24) twenty-four post-petition mortgage payments to Movant.

6. Debtor is behind (4) four payments outside the plan, through the payment due June 1, 2020.

7. The total amount of delinquency outside the plan is $5,532.60
The amount is computed in the following manner:

   4 times payment of $1,383.15.


Each Monthly Payment is comprised of:
Principal and Interest.... $678.63
Escrow............................$707.52
**TOTAL**..............$1,383.15


8. Pursuant to the foregoing, Movant is entitled to relief from the automatic stay due to the foregoing default and because:

   (a) Adequate protection of the interest of Movant is lacking; and

   (b) The collateral is not and cannot be a part of an effective reorganization.

Accordingly, Movant is entitled to relief from the automatic stay under 11 *U.S.C.* §362(d)(1) and/or (2).

9. Movant has cause to have the Automatic Stay modified as to permit Movant to commence foreclosure on its mortgage.

10. Movant has had to incur legal fees as a result of the prosecution of this Motion.

11. Movant has cause to have relief from the Automatic Stay effective immediately and such relief should not be subject to the fourteen day period set forth in Bankruptcy Rule 4001(a)(3), as Movant will incur substantial additional costs and expenses by the imposition of said fourteen day period.

12. The other Respondent is the Chapter 13 Trustee appointed in the above-captioned chapter 13 proceeding.


WHEREFORE, Movant respectfully requests that the Court enter an Order which grants it relief from the Automatic Stay, along with all other relief the Court deems just and equitable under the circumstances.

Dated: June 10, 2020

By:/s/EMMANUEL J. ARGENTIERI
EMMANUEL J. ARGENTIERI

PA ATTORNEY ID NO. 59264
Attorneys for: Movant

ROMANO GARUBO & ARGENTIERI
Emmanuel J. Argentieri, Esquire/59264
52 Newton Avenue, P.O. Box 456
Woodbury, New Jersey 08096
(856) 384-1515
eargentieri@rgalegal.com

## ADJUSTABLE RATE NOTE
### (LIBOR Index-Rate Caps - 10 Year Interest Only Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

May 01, 2007
BETHLEHEM, PA
1602 CHESTERFIELD DR, Stroudsburg, PA 18260

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 248,000.00
Two Hundred Forty-Eight Thousand   and 00/100ths
(this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
Chase Bank USA, N.A.

a National Association   organized and existing under the laws of United States
I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of Seven and .825/1000
7.825

The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
**(A)  Time and Place of Payments**
I will make a payment on the 1st   day of every month, beginning on   June 01, 2007
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making payments every month as provided below.

I will make my monthly payments of principal and interest on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on May 01, 2037   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 300 Tice Boulevard, 3rd Floor North
Woodcliff Lake, NJ 07677
or at a different place if required by the Note Holder.
**(B)  Amount of My Initial Monthly Payment**
Each of my initial monthly payments will be in the amount of U.S. $ 1,555.17
One Thousand Five Hundred Fifty-Five and 17/100ths
until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.
**(C)  Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A)  Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st   day of
May, 2009   , and the adjustable interest rate I will pay may change on that day every sixth month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

MULTISTATE LIBOR ARM 10 YEAR INTEREST ONLY NOTE
RC5394 (4/06)   Page 1 of 4

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding

Four and 900/1000
percentage points (4.900                    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    Ten  and  525/1000
10.525
or less than  Seven  and  525/1000                                                                  %.
7.525
Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one and a half percentage points (1.5%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than
14.525
Fourteen  and  525/1000
and will never be lower than  Seven  and  525/1000                                                  %.
7.525

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The Notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**1. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments   See Attached Rider

If the Note Holder has not received the full amount of any monthly payment by the end of ___ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ___ % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law as of the date of this Security Instrument.   Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  5-4-07
Borrower  MARCOS R CAMARGO         Date

_____
Borrower                          Date

_____
Borrower                          Date

_____
Borrower                          Date

_____
Borrower                          Date

_____
Borrower                          Date

MULTISTATE LIBOR ARM 10 YEAR INTEREST ONLY NOTE
BC3784   (4/06)   Page 4 of 4

Loan Number:

## LATE CHARGE RIDER TO NOTE

This LATE CHARGE RIDER TO NOTE amends that certain Note dated   May 24, 2007
and executed by MARCOS E CAMARGO

("Borrower(s)") in connection with a loan made by
**Chase Bank USA, N.A.**
("Lender"). This LATE CHARGE RIDER TO NOTE, which is executed as of the same date as the Note, is made a part of
the Note. All defined terms have the same meaning as defined in the Note.

A.   Section 6a if Fixed Rate Note or Section 7a if Adjustable Rate Note ("LATE CHARGE FOR OVERDUE
PAYMENTS") is deleted and replaced in its entirety by the following:

If the Note Holder has not received the full amount of any monthly payment within 15
days of the payment due date shown on the monthly payment notice, I will pay a late charge to the Note Holder.
The amount of the charge will be the greater of  6.000             % of my overdue
payment of principal and interest or $29.50            . If my loan provides for an Interest
Only repayment period, the amount of the charge will be the greater of  6.000              % of my
overdue payment of interest, during the period when my payment is interest only, and of principal and interest
thereafter, or  $29.50             . I will pay this late charge promptly but only once on each
late payment.

B.   Except for the charges set forth in the LATE CHARGE FOR OVERDUE PAYMENTS, all terms of the Note remain
in full force and effect.

WITNESS the Hand(s) and Seal(s) of the Undersigned.

Borrower _____   5-4-07
MARCOS E CAMARGO        Date          Borrower _____   Date

Borrower _____   Date          Borrower _____   Date

Borrower _____   Date          Borrower _____   Date

Late Charge Rider To Note
BC6783 (3/06)   (replaces 3/25)

## PREPAYMENT RIDER TO NOTE

**NOTICE TO BORROWER:** Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

This PREPAYMENT RIDER TO NOTE amends that certain Note dated May 04, 2007 and executed by MARCOS E CAMARGO

("Borrower(s)") in connection with a loan made by
Chase Bank USA, N.A.,
("Lender"). This PREPAYMENT RIDER TO NOTE, which is executed as of the same date as the Note, is made a part of the Note. All defined terms have the same meaning as defined in the Note.

A. Section 4 if Fixed Rate Note, or Section 3 if Adjustable Rate Note ("BORROWER'S RIGHT TO PREPAY") is deleted and replaced in its entirety by the following:

I have a right to make payments of principal at any time before they are due. A prepayment of all the unpaid principal is known as a "full prepayment". A prepayment of any part of the unpaid principal is known as a "partial prepayment". When I make a partial or full prepayment, I will tell the Note Holder in writing that I am doing so. If my loan allows me to pay interest only or to make a fully amortizing payment of principal and interest for any monthly payment before the First Principal and Interest Payment Due Date, my such fully amortizing payment of principal and interest which I make will NOT be considered a partial repayment for purpose of calculating prepayment premiums under this Rider.

I may make full prepayment or partial prepayment, subject to the following conditions:

2        YEAR OPTION. If, within the first 2        year(s) after the date of this Note I should prepay this Note in full or in part, I shall pay to the Note Holder a prepayment premium equal to six (6) months' advance interest on the amount prepaid in excess of 20 percent of the original principal balance in any 12 month period measured from the Note date or anniversary thereof. [For 5-year option only] If I prepay during the fourth and fifth years, I will be charged a prepayment penalty premium equal to three (3) months' advance interest on the amount prepaid in excess of 20 percent of the original principal balance. For this purpose, advance interest shall be calculated at the rate in effect on the date of full or partial prepayment.

After 2        years from the date of this Note, I may prepay in part or in full without payment of any premium.

The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

IF MY LOAN IS SECURED BY PROPERTY LOCATED IN NEW YORK, a prepayment penalty may only be charged during the first year of my loan. In addition, a prepayment penalty may be charged on Adjustable Rate Loans only if the initial interest rate remains fixed for at least 3 years.

B. Except for the changes set forth in this PREPAYMENT RIDER TO NOTE, all terms of the Note remain in full force and effect.

WITNESS the Hand(s) and Seal(s) of the Undersigned.

_____  5-4-07
Borrower                 Date          _____  _____
MARCOS E CAMARGO                       Borrower                 Date

_____  _____      _____  _____
Borrower                 Date          Borrower                 Date

_____  _____      _____  _____
Borrower                 Date          Borrower                 Date

_____  _____      _____  _____
Borrower                 Date          Borrower                 Date

B&C PREPAYMENT RIDER TO NOTE
BO-571394 (3006) (Replaces 3/05)

## FIXED RATE PREPAYMENT DISCLOSURE AND
## PREPAYMENT PENALTY ADDENDUM TO ADJUSTABLE RATE MORTGAGE LOAN DISCLOSURE

**NOTICE TO BORROWER:** Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

The information in this disclosure illustrates a change in the prepayment feature for this fixed or adjustable rate mortgage (ARM) loan. If an ARM loan, the following is added to and made a part of the attached Adjustable Rate Mortgage Disclosure Statement.

**PREPAYMENT:**

You have a right to make payments of principal at any time before they are due. However, you must tell us in writing whenever you make a prepayment. Partial prepayments will not change the due dates of monthly payments and may not immediately affect the monthly payment amount.

You have the option of selecting a two, three, or five-year term prepayment penalty option, which determines how long the prepayment penalty will remain in force. During this term, a premium will be charged if you prepay in full or in part any amount that exceeds 20 percent within any 12 month period measured from the Note date or anniversary thereof. A premium equal to six (6) months' advance interest on the amount prepaid in excess of 20 percent of the original principal balance will be charged if you prepay during the first three years of your loan.

If you prepay in full or in part during the fourth and fifth years (if applicable), you will be charged a prepayment penalty premium equal to three (3) months' advance interest on the amount prepaid in excess of 20 percent of the original principal balance.

Your prepayment penalty will remain in force for two years, three years, or five years depending upon the option you select. Not all of these options are available in every state. After your prepayment penalty expires, you may make a partial or a full prepayment without paying any prepayment penalty premium.

**IF YOUR LOAN IS SECURED BY PROPERTY LOCATED IN NEW YORK,** a prepayment penalty may only be charged during the first year of your loan. In addition, a prepayment penalty may be charged on Adjustable Rate loans only if the initial interest rate remains fixed for at least 5 years.

|  |  |  |  |
|---|---|---|---|
| _[signature]_ | 5-4-07 | Borrower | Date |
| MARCOS E CAMARGO | Date |  |  |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

Prepayment Addendum to ARM Disclosure/Fixed Rate Disclosure
BC-6700M (3/05)  ( Replaces BC6700 11/02)

## FIXED RATE PREPAYMENT DISCLOSURE AND
## PREPAYMENT PENALTY ADDENDUM TO ADJUSTABLE RATE MORTGAGE LOAN
## DISCLOSURE

**NOTICE TO BORROWER:** Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

The information in this disclosure illustrates a change in the prepayment feature for this fixed or adjustable rate mortgage (ARM) loan. If an ARM loan, the following is added to and made a part of the attached Adjustable Rate Mortgage Disclosure Statement.

### PREPAYMENT:

You have a right to make payments of principal at any time before they are due. However, you must tell us in writing whenever you make a prepayment. Partial prepayments will not change the due dates of monthly payments and may not immediately affect the monthly payment amount.

You have the option of selecting a two, three, or five-year term prepayment penalty option, which determines how long the prepayment penalty will remain in force. During this term, a premium will be charged if you prepay in full or in part any amount that exceeds 20 percent within any 12 month period measured from the Note date or anniversary thereof. A premium equal to six (6) months' advance interest on the amount prepaid in excess of 20 percent of the original principal balance will be charged if you prepay during the first three years of your loan.

If you prepay in full or in part during the fourth and fifth years (if applicable), you will be charged a prepayment penalty premium equal to three (3) months' advance interest on the amount prepaid in excess of 20 percent of the original principal balance.

Your prepayment penalty will remain in force for two years, three years, or five years depending upon the option you select. Not all of these options are available in every state. After your prepayment penalty expires, you may make a partial or a full prepayment without paying any prepayment penalty premium.

**IF YOUR LOAN IS SECURED BY PROPERTY LOCATED IN NEW YORK,** a prepayment penalty may only be charged during the first year of your loan. In addition, a prepayment penalty may be charged on Adjustable Rate loans only if the initial interest rate remains fixed for at least 5 years.

| | |
|---|---|
| _(signature)_     5-4-07 | |
| Borrower       Date | Borrower       Date |
| MARCOS E CAMARGO | |
| | |
| Borrower       Date | Borrower       Date |
| | |
| Borrower       Date | Borrower       Date |
| | |
| Borrower       Date | Borrower       Date |



73.50 × 20P
3N

Prepared By:
Mendez, Jessica

Return To:
Chase USA c/o CMF, LLC
Attn: Trailing Documents
700 Kansas Lane Mail Code: LA4-4106
Monroe, LA 71203

Parcel Number:
17/148/1/8
Premises:
1602 CHIPPERFIELD DR
Stroudsburg, PA 18360-0000

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated May 04, 2007
together with all Riders to this document.
(B) "Borrower" is MARCOS E CAMARGO, LISSETTE CAMARGO

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Chase Bank USA, N.A.

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3039   1/01

-6(PA) (0606)

Page 1 of 15                                           Initials: *MEC*
                                                               *MEC  LC*
VMP Mortgage Solutions, Inc. (800)521-7291

REC Book 2304 Page 4312

Lender is a National Association
organized and existing under the laws of United States
Lender's address is 200 White Clay Center Drive
Newark, DE 19711
Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated May 04, 2007
The Note states that Borrower owes Lender Two Hundred Forty-Eight Thousand
and 00/100ths                                                                    Dollars
(U.S. $248,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than May 01, 2037

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider    [ ] Condominium Rider          [ ] Second Home Rider
- [ ] Balloon Rider            [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
- [ ] VA Rider                 [ ] Biweekly Payment Rider     [x] Other(s) [specify]
                                                               Interest Only ARM Rider

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

Initials: MEC, LC                    Form 3038    1/01
-6(PA) (0608)          Page 2 of 18

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the   COUNTY                    [Type of Recording Jurisdiction]
of Monroe                                                                    [Name of Recording Jurisdiction]:
SEE ATTACHED EXHIBIT A

which currently has the address of
1602 CHIPPERFIELD DR                                                      [Street]
Stroudsburg                                [City], Pennsylvania 18360-0000 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

-6(PA) (0400)                          Page 3 of 15          Initials: *NEC  LC*      Form 3039  1/01

Exhibit "A"

ALL THAT CERTAIN tract, piece or parcel of land, situate in the
Township of Stroud, County of Monroe, and Commonwealth of
Pennsylvania, bounded and described as follows, to wit:

BEGINNING at a set iron pipe at the intersection of the
northwesterly line of Heritage Drive with the northeasterly line of
Chipperfield Drive; thence along the northeasterly line of
Chipperfield Drive North sixty-four degrees forty-six minutes three
seconds West one hundred fifty feet to a set iron pipe; thence by
Lot No. 103 North twenty-five degrees thirteen minutes fifty
seconds East one hundred fifty-six and nineteen one-hundredths feet
to a set iron pipe; thence by Lot No. 109 and by Lot No. 110 South
fifty-one degrees fifty-four minutes fifty seconds East (at sixty-
five and ninety-nine one-hundredths feet passing a found iron pipe)
one hundred eighty and ninety-nine one-hundredths feet to a found
iron pipe; thence along the northwesterly line of Heritage Drive
South thirty-eight degrees five minutes ten seconds West one
hundred eighteen and ninety one-hundredths feet to the place of
beginning.

CONTAINING 0.516 acres, more or less.

Tax Code No. 17/14E/1/8

BEING THE SAME PREMISES WHICH Benjamin Rosa and Rosa Fuentes-Rosa
by Deed dated ___5-4-07___ and intended to be recorded in the
Office for the Recording of Deeds in and for Monroe County granted
and conveyed unto Marcos E. Camargo.

# ADJUSTABLE RATE RIDER
## Initial Interest Only Payments
### (LIBOR Six-Month Index (As Published in *The Wall Street Journal* - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 4th day of May, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Chase Bank USA, N.A.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: 1682 CHIPPERFIELD DR, Stroudsburg, PA 18360

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of Seven and 525/1000
7.525 %.
The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
  (A)  Change Dates
  The interest rate I will pay may change on the 1st day of May, 2009 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date".

BC Interest Only ARM RIDER
BC-6755 (4/06)    Page 1 of 3

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Four and 900/1000

percentage points (4.900                %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.525                                                                                %
or less than  Seven and 525/1000
7.525                                                                                %.
Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one and a half percentage points (1.5%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than Fourteen and 525/1000
14.525                                                                                %
and will never be lower than  7.525                                                                    %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

BC Internal Only  ARM RIDER
BC-6795 (4/05)    Page 2 of 3

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

| | | | |
|---|---|---|---|
| Borrower **MARCOS E CAMARGO** | 5-4-07 Date | Borrower **LISSETTE CAMARGO** | 5-4-07 Date |
| Borrower **LISSETTE CAMARGO** | 5-4-07 Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

BC Interest Only ARM RIDER
SC-6785 (4/05) Page 3 of 3

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be

-6(PA) (0811)

Page 4 of 15

Initials: _HPC_ _LC_

Form 3039 1/01

paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Initials HEC  L C    Form 3039  1/01

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

-4(PA) (9806)

Page 6 of 16

Initials: *HEC, LC*

Form 3036   1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: *HEC  LC*    Form 3038   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be

dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to

-6(PA) (0000)                     Page 11 of 16                     (Initials) *HEC, LC*                     Form 3839   1/01

have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or

agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. Reinstatement Period. Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. Purchase Money Mortgage. If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. Interest Rate After Judgment. Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Initials: *HEC LC*

-8(PA) (0808)

Page 14 of 16

Form 3039 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                MARCOS F CAMARGO        -Borrower

                                                _____ (Seal)
                                                LISSETTE CAMARGO        -Borrower

_____ (Seal)                 _____ (Seal)
LISSETTE CAMARGO    -Borrower                                           -Borrower

_____ (Seal)                 _____ (Seal)
                    -Borrower                                           -Borrower

_____ (Seal)                 _____ (Seal)
                    -Borrower                                           -Borrower

COMMONWEALTH OF PENNSYLVANIA, Monroe                                    County ss:

On this, the 04th                day of May, 2007                , before me, the undersigned officer, personally appeared MARCOS E CAMARGO and LISSETTE CAMARGO and LISSETTE CAMARGO

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

_Brenda L. Bushell_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Brenda L. Bushell, Notary Public
Stroudsburg Boro, Monroe County
My Commission Expires Dec. 28, 2009

_____
Title of Officer

Certificate of Residence

I, _RICHARD S. LIESE_                                    , do hereby certify that the correct address of the within-named Mortgagee is

Witness my hand this 04th                day of May, 2007

_____
Agent of Mortgagee

Initials MEC, LC

-6(PA) (0304)                          Page 18 of 18                          Form 3838   1/01



## COUNTY OF MONROE

*RECORDER OF DEEDS*
7th & MONROE STREETS
STROUDSBURG, PA 18360
Area Code (570) 517-3969

Helen Diecidue - Recorder
Mary Ann Lash - Chief Deputy
Jamie Butz - Deputy

Instrument Number - 200717636
Recorded On 5/4/2007 At 2:53:02 PM
* Instrument Type - MORTGAGE
Invoice Number - 475613
* Mortgagor - CAMARGO, MARCOS E
* Mortgagee - CHASE BANK USA N A
User - SMT
* Customer - BOYER HOLZINGER HARAK & SCOMILLIO

Book - 2304   Starting Page - 4312
* Total Pages - 21

* FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| RECORDING FEES | $45.00 |
| AFFORDABLE HOUSING | $13.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $73.50 |

RETURN DOCUMENT TO:
BOYER HOLZINGER HARAK & SCOMILLIO
1216 LINDEN ST
PO BOX 1409
BETHLEHEM, PA 18016

TAX ID #
17/14B/1/8
Total Tax IDs: 1



I hereby CERTIFY that this document is recorded in the Recorder's Office of Monroe County, Pennsylvania

*Helen Diecidue*

THIS IS A CERTIFICATION PAGE

# Do Not Detach

THIS PAGE IS NOW THE LAST PAGE
OF THIS LEGAL DOCUMENT

* Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

Book: 2304  Page: 4332

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that "Chase Bank USA, N.A." hereinafter "Assignor" the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by CHASE HOME FINANCE LLC, "Assignee," the receipt whereof is acknowledged, has granted, bargained, sold, assigned, transferred and set over unto the said Assignee, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by MARCOS E. CAMARGO and LISSETTE CAMARGO to CHASE BANK USA, N.A., bearing the date 05/04/2007, in the amount of $248,000.00, said Mortgage being recorded on 05/04/2007 in the County of MONROE, Commonwealth of Pennsylvania, in Mortgage Book 2304 Page 4312.

Being Known as Premises: 1602 CHIPPERFIELD DRIVE, STROUDSBURG, PA 18360-9705
Parcel No: 17/14B/1/8

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignor. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, Claim and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit and behoof forever; subject, nevertheless, to the equity of redemption of said Mortgagor in the said Indenture of Mortgage named, and his/her/their heirs and assigns therein.

IN WITNESS WHEREOF, the said "Assignor" has caused its Corporate Seal to be herein affixed and these presents to be duly executed by its proper officers this 29th day of December, 2010.

Chase Bank USA, N.A., by and through its Attorney in Fact,
Phelan Hallinan & Schmieg, LLP

By: _____
Judith T. Romano, Partner

Sealed and Delivered
in the presence of us;

*Power of Attorney has previously been recorded in MONROE County

State of Pennsylvania          :
                               : ss.
County of Philadelphia         :

On this 29th day of December, 2010, before me, the subscriber, personally appeared Judith T. Romano, who acknowledged herself to be the Partner of Chase Bank USA, N.A., by and through its Attorney in Fact, Phelan Hallinan & Schmieg, LLP, and that she, as such Partner, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
EUGENE JASKIEWICZ, Notary Public
City of Philadelphia, Phila. County
My Commission Expires August 13, 2012

_____
Notary Public

Stamp/Seal:

The precise address of the within named
Assignee is:
10790 RANCHO BERNARDO RD
SAN DIEGO, CA 92127
By: _____
(For Assignee)

After recording return to:
Phelan Hallinan & Schmieg, LLP
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103

December 28, 2010
Document Execution
0024444143
PHS # 260018

REC Book 2382 Page 9558

ALL THAT CERTAIN tract, piece or parcel of land, situate in the Township of Stroud, County of Monroe, and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

BEGINNING at a set iron pipe on the at the intersection of the northwesterly line of Heritage Drive with the northeasterly line of Chipperfield Drive; thence along the northeasterly line of Chipperfield Drive North sixty-four degrees forty-six minutes three seconds West one hundred fifty feet to a set iron pipe; thence by Lot No. 103 North twenty-five degrees thirteen minutes fifty seconds East one hundred fifty-six and nineteen one-hundredths feet to a set iron pipe; thence by Lot No. 109 and by Lot No. 110 South fifty-one degrees fifty-four minutes fifty seconds East (at sixty-five and ninety-nine one-hundredths feet passing a found iron pipe) one hundred eighty and ninety-nine one-hundredths feet to a found iron pipe; thence along the northwesterly line of Heritage Drive South thirty-eight degrees five minutes ten seconds West one hundred eighteen and ninety one-hundredths feet to the place of BEGINNING.

CONTAINING 0.516 acres, more or less.

BEING the same premises which Frank Caleca and Mary Caleca, by their deed dated October 28, 2005 and recorded in the Office for the Recording of Deeds in and for the County of Monroe, Commonwealth of Pennsylvania in Deed Book Volume 2245, Page 9151, granted and conveyed unto Benjamin Rosa and Rosa Fuentes-Rosa, grantors herein.

The above description being in addition to all of Lot No. 101, also part of Lot No. 102, as shown on map titled 'Map of Subdivision, Wedgewood Lake Estate, Lester and Berta Katz, 8 June 1965', as revised by Robert E. Felker, R.S., June 1976, per attached sketch of 'Division of Lots owned by Clinton C. Simpson'.



# COUNTY OF MONROE

*RECORDER OF DEEDS*
7th & MONROE STREETS
STROUDSBURG, PA 18360
Area Code (570) 517-3969

Helen Diecidue - Recorder

Instrument Number - 201103221
Recorded On 2/10/2011 At 3:39:47 PM
* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number - 582168
* Grantor - CAMARGO, MARCOS E
* Grantee - CHASE HOME FINANCE LLC
User - CK
* Customer - PHELAN HALLINAN & SCHMIEG LLP
* FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| RECORDING FEES | $13.50 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $42.50 |

Book - 2382   Starting Page - 9558
* Total Pages - 3

RETURN DOCUMENT TO:
PHELAN HALLINAN & SCHMIEG LLP
ONE PENN CENTER AT SUBURBAN STATION
1617 JFK BLVD STE 1400
PHILADELPHIA, PA 19103-9897

TAX ID #
17/14B/1/8
Total Tax IDs: 1



I Hereby CERTIFY that this document is recorded in the
Recorder's Office of Monroe County, Pennsylvania

*Helen Diecidue*

THIS IS A CERTIFICATION PAGE

# Do Not Detach

THIS PAGE IS NOW THE LAST PAGE
OF THIS LEGAL DOCUMENT

* Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

035BF9



Book: 2382  Page: 9560

Prepared By:
PEIRSONPATTERSON, LLP
4400 ALPHA ROAD
DALLAS, TX 75244-4505


After Recording Please Return To:
Rushmore Loan Management Services LLC
Attn: Records Management
15480 Laguna Canyon Road, Suite 100
Irvine, CA 92618


UPI/PIN/Tax ID: 17/143/1/8

_____[Space Above This Line For Recording Data]_____

Loan No.:

# PENNSYLVANIA ASSIGNMENT OF MORTGAGE

For Value Received, JPMorgan Chase Bank, National Association, the undersigned holder of a Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey unto U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust, (herein "Assignee"), whose address is 15480 Laguna Canyon Road, Suite 100, Irvine, CA 92618, a certain Mortgage dated May 4, 2007 and recorded on May 4, 2007, made and executed by MARCOS E CAMARGO AND LISSETTE CAMARGO, to and in favor of CHASE BANK USA, N.A. upon the following described property situated in MONROE County, Commonwealth of Pennsylvania:

Property Address: 1602 CHIPPERFIELD DR, STROUDSBURG, PA 18360

See exhibit "A" attached hereto and made a part hereof.

such Mortgage having been given to secure payment of Two Hundred Forty Eight Thousand and 00/100ths ($248,000.00), which Mortgage is of record in Book, Volume or Liber No. 2304, at Page 4312 (or as No. 200717636), in the Office of the Recorder of Deeds of MONROE County, Commonwealth of Pennsylvania.


TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

---

Pennsylvania Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W3643                 Page 1 of 3                 L73108PA 01/12 Rev. 02/14



## Exhibit "A"

ALL THAT CERTAIN tract, piece or parcel of land, situate in the Township of Stroud, County of Monroe, and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

BEGINNING at a set iron pipe at the intersection of the northwesterly line of Heritage Drive with the northeasterly line of Chipperfield Drive; thence along the northeasterly line of Chipperfield Drive North sixty-four degrees forty-six minutes three seconds West one hundred fifty feet to a set iron pipe; thence by Lot No. 103 North twenty-five degrees thirteen minutes fifty seconds East one hundred fifty-six and nineteen one-hundredths feet to a set iron pipe; thence by Lot No. 109 and by Lot No. 110 South fifty-one degrees fifty-four minutes fifty seconds East (at sixty-five and ninety-nine one-hundredths feet passing a found iron pipe) one hundred eighty and ninety-nine one-hundredths feet to a found iron pipe; thence along the northwesterly line of Heritage Drive South thirty-eight degrees five minutes ten seconds West one hundred eighteen and ninety one-hundredths feet to the place of beginning.

CONTAINING 0.516 acres, more or less.

Tax Code No. 17/14B/1/8

BEING THE SAME PREMISES WHICH Benjamin Rosa and Rosa Fuentes-Rosa by Deed dated ___5-4-07___ and intended to be recorded in the Office for the Recording of Deeds in and for Monroe County granted and conveyed unto Marcos E. Camargo.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 03/31/2017 .

Assignor:
JPMorgan Chase Bank, National Association

By: _Angel Anderson_ (signature)
      Angel Anderson

Its: _Vice President_

Certificate of Residence:

I/We do hereby certify that the precise address of the within named mortgagee, assignee or person entitled to interest is 15480 Laguna Canyon Road, Suite 100, Irvine, CA. 92618.

JPMorgan Chase Bank, National Association as assignee or agent for assignee

By: _Angel Anderson_ (signature)
      Angel Anderson

Its: _Vice President_

## ACKNOWLEDGMENT

State of Louisiana

Parish of Ouachita

On this __28th__ day of __March 2017__ , before me appeared __Angel Anderson__ , to me personally known, who, being by me duly sworn (or affirmed) did say that he/she is the __Vice President__ , of JPMorgan Chase Bank, National Association, and that the seal affixed to said instrument is the corporate seal of said entity and that the instrument was signed and sealed on behalf of the said entity by authority of its board of directors and that __Angel Anderson__ acknowledged the instrument to be the free act and deed of the said entity.

KATRINA MARIE JOHNSON
NOTARY
68375
PUBLIC
LIFETIME COMMISSION • OUACHITA PARISH, LA

(Seal)

Signature of Officer

Katrina Marie Johnson 68375

Printed Name

Notary Public

Title of Officer

My Commission Expires: __Lifetime__

Pennsylvania Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W3643          Page 3 of 3          L.73106PA 01/12 Rev. 02/14



`* 1 - 3 7 9 1 3 9 *`          `* 0 0 2 4 4 4 4 1 4 3 *`



# COUNTY OF MONROE

**RECORDER OF DEEDS**
**610 MONROE STREET**
**SUITE 126**
**STROUDSBURG, PA 18360**
Area Code (570) 517-3969

Josephine Ferro - Recorder

Instrument Number - 201711933
Recorded On 5/16/2017 At 11:16:55 AM
* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number - 731350
* Grantor - CAMARGO, MARCOS E
* Grantee - U S BANK NATIONAL ASSOCIATION
User - FRC
* Customer - SIMPLIFILE LC E-RECORDING
* FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $35.50 |
| RECORDING FEES | $13.50 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TAX CODE CERTIFICATION FEES | $10.00 |
| TOTAL PAID | $64.50 |

Book - 2491   Starting Page - 3007
* Total Pages - 5

RETURN DOCUMENT TO:
PHELAN HALLINAN DIAMOND & JONES, LLP
400 FELLOWSHIP ROAD
MOUNT LAUREL, NJ 08054

MC GIS Registry UPI Certification
On May 16, 2017 By JG

TAX ID #
17/14B/1/8
Total Tax IDs: 1



I Hereby CERTIFY that this document is recorded in the
Recorder's Office of Monroe County, Pennsylvania

*Josephine Ferro*

## THIS IS A CERTIFICATION PAGE

# Do Not Detach

THIS PAGE IS NOW THE LAST PAGE
OF THIS LEGAL DOCUMENT

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

05A79F

Book: 2491  Page: 3011

PREPARED BY: RUSHMORE LOAN MANAGEMENT SERVICES LLC

AFTER RECORDATION RETURN TO:
RUSHMORE LOAN MANAGEMENT SERVICES LLC
15480 Laguna Canyon Road, Suite 100
Irvine CA 92618

## ASSIGNMENT OF MORTGAGE

**LOAN #** .

**FOR VALUE RECEIVED:**
**ASSIGNOR:**      U.S. BANK N.A. AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST

**ASSIGNOR ADDRESS:**      60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107

**HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:**

**ASSIGNEE:**      J.P. MORGAN MORTGAGE ACQUISITION CORP.

**ASSIGNEE ADDRESS:**      383 MADISON AVENUE, NEW YORK, NY 10179

ALL OF ITS RIGHT, TITLE, AND INTEREST IN AND TO THE PROPERTY COVERED BY THAT CERTAIN MORTGAGE:
DATED:      05/04/2007
ORIGINAL LOAN AMOUNT:      $248,000.00
MORTGAGOR/BORROWER:      MARCOS E CAMARGO, LISSETTE CAMARGO
ORIGINAL MORTGAGEE:      CHASE BANK USA, N.A.

**RECORDED** IN THE OFFICIAL REAL PROPERTY RECORDS OF **MONROE** COUNTY, **PA**
RECORDED: 05/04/2007 IN BOOK/VOLUME/LIBER: 2304 PAGE: 4312 DOCUMENT: 200717636

PROPERTY SUBJECT TO LIEN: 1602 CHIPPERFIELD DR, STROUDSBURG, PENNSYLVANIA 18360
THE PROPERTY IS LOCATED IN STROUDSBURG CITY, MONROE COUNTY, PENNSYLVANIA

TOGETHER WITH THE PROMISSORY NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO THEREIN AND SECURED THEREBY, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID MORTGAGE.

PA 01/13

LOAN #:

IN WITNESS WHEREOF, ASSIGNOR HAS EXECUTED THIS INSTRUMENT AS OF THE
27 DAY OF September, 2019.

ATTESTED BY:

BY: _____
NAME:     Jeffrey Lisinicchia
TITLE:     Sr. Vice President

U.S. BANK N.A. AS LEGAL TITLE TRUSTEE FOR
TRUMAN 2016 SC6 TITLE TRUST BY RUSHMORE
LOAN MANAGEMENT SERVICES LLC ITS
APPOINTED ATTORNEY IN FACT

BY: _____
NAME: _____
TITLE:     Tamara Sulea
            Assistant Secretary

Certificate of Residency
I, the undersigned,
do certify that the assignee's precise address is

383 MADISON AVENUE, NEW YORK, NY 10179
Witness my hand this date:

_____

Tamara Sulea
Assistant Secretary

PA 01/13

**ALL-PURPOSE ACKNOWLEDGMENT**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

**State of California**
**County of ORANGE**

On **SEP 27 2019**, before me, **Theresa J Barrett**, Notary Public, personally appeared, **Tamara Sulea** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

THERESA J BARRETT
Notary Public – California
Orange County
Commission # 2217151
My Comm. Expires Oct 7, 2021

Signature of Notary    Theresa J Barrett

(seal)

PA 01/13